**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| **JAMES RIVER INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | **FILE NO. _____-AT** |
| | ) | |
| **DALTON-WHITFIELD REGIONAL SOLID WASTE MANAGEMENT AUTHORITY, and JARROD JOHNSON, individually, and on behalf of a class of persons similarly situated,** | ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff JAMES RIVER INSURANCE COMPANY ("Plaintiff" or "JRIC"), by and through the undersigned counsel of record, and files this, its Complaint for Declaratory Judgment against Defendant Dalton-Whitfield Regional Solid Waste Management Authority ("Dalton-Whitfield" or "DWSWA"), and Jarrod Johnson ("Johnson" or collectively, "Defendants"), showing the Court as follows:

1.

This is an action for declaratory judgment filed pursuant to Rule 57 of the FRCP and 28 U.S.C. 2201, seeking a declaration of the rights and other legal

relations surrounding the questions of actual controversy which presently exist between JRIC and Defendant DWSWA.

## PARTIES, JURISDICTION AND VENUE

2.

Plaintiff James River Insurance Company is an Ohio insurance company with its principal place of business located in Columbus, Ohio.

3.

Defendant DWSWA is a Georgia municipal solid waste authority, with its principal place of business located at 587 Gazaway Road, Dalton, Georgia 30721. It may be served through its registered agent Henry Thorpe, located at 225 West King Street, Dalton, Georgia 30720.  Defendant is subject to the jurisdiction and venue of this Court.

4.

Defendant Jarrod Johnson is a resident of Floyd County, Georgia and resides at 13 S. Ivy Ridge Road, Rome, Georgia 30161.

5.

The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332. Plaintiff is a citizen of a different state than all of the Defendants.

6.

The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

7.

Pursuant to 28 U.S.C. §2201, this Court also has jurisdiction because JRIC is seeking a declaration from this Court regarding the parties' rights and obligations with respect to insurance policies issued by JRIC.

8.

Venue is proper in this Court pursuant to 28 U.S.C. §1391.

9.

The policies at issue in this action were negotiated and entered into in the State of Georgia.  Accordingly, the laws of the State of Georgia apply with regard to the interpretation of the policies at issue.

## BACKGROUND FACTS

10.

JRIC re-alleges and incorporates by reference all prior Paragraphs of its Complaint for Declaratory Judgment as if fully set forth herein.

11.

On November 26, 2019, Plaintiff Jarrod Johnson – individually, and on behalf of a class of persons who were purportedly similarly situated to him – filed

suit against over thirty (30) named Defendants, as well as a number of unnamed defendants, in the Superior Court of Floyd County, Georgia. The case was docketed in the Superior Court of Floyd County as civil action number 19CV02448JFL003. A true and accurate copy of that Complaint is attached here to as Exhibit "A". (Defendant Johnson, (Plaintiff below) did not name or serve DWSWA.)

12.

As more fully detailed in Exhibit "A", the Complaint asserted that the named Defendants and the unnamed defendants were causing damages by intentionally polluting waterways. For example, the Complaint alleged in pertinent part that Jarrod Johnson, and a class of people similarly situated to Mr. Johnson, have been damaged and continue to be damaged "due to the intentional, willful, wanton, reckless and negligent release of toxic chemicals" by the Defendants' manufacturing processes and facilities. [Ex. A ¶ 1].

13.

As more fully detailed in Exhibit "A", the Complaint further alleged that "Defendants have long been aware of the persistence and toxicity of PFOA, PFOS, and related chemicals. Defendants, nonetheless, knowingly and intentionally discharged and continue to discharge these chemicals into the rivers and

watersheds that supply drinking water to the City of Rome and its water subscribers." [Ex. A ¶ 62].

14.

As more fully detailed in Exhibit "A", the Complaint further alleged that "[U]pon information and belief, all Defendants knew or should have known that, in its intended and/or common use, PFCs would very likely cause harm and injury, and/or threaten public health and the environment." [Ex. A ¶ 75].

15.

On January 10, 2020, one of the named defendants in the Underlying Lawsuit, 3M Company, removed the lawsuit from the Superior Court of Floyd County, Georgia to the United States District Court for the Northern District of Georgia, Rome Division. The removed case was assigned case number 4:20-cv-000008-AT.

16.

In late June or early July of 2020, DWSWA was served with a Notice of Intent to Sue letter dated June 26, 2020.

17.

On August 27, 2020, Jared Johnson, individually, and on behalf of a class of persons similarly situated to him, filed an amended complaint in the United States

District Court for the Northern district of Georgia, Rome division (4:20-cv-000008-AT). A true and correct copy of the Amended Complaint is attached as Exhibit "B". This filing did name DWSWA as a defendant, and it was served with suit on or about September 1, 2020.

18.

Underscoring that polyfluoralkyl substances are pollutants, and as more fully detailed in Exhibit B, the Amended Complaint further alleged that polyfluoralkyl substances "are a large group of man-made chemicals that do not occur naturally in the environment." [Ex. B ¶ 51].

19.

Further underscoring that polyfluoralkyl substances are pollutants, the Amended Complaint alleged that there "is no known environmental breakdown mechanism for [polyfluoralkyl substances], and they are readily absorbed into biota and tend to bioaccumulate with repeated exposure. [Polyfluoralkyl substances] leach from soil to groundwater, are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination, and a major source of human exposure to [polyfluoralkyl substances] is through ingestion of contaminated drinking water." [Ex. B. ¶ 52].

20.

As more fully detailed in Exhibit B, the Amended Complaint alleged that the defendants—including DWSWA—were guilty of "intentional, willful, wanton, reckless, and negligent discharge of [polyfluoralkyl substances] from Defendants' manufacturing processes and facilities into the [Dalton Utilities Publicly Owned Treatment Works]." [Ex. B. ¶ 2].

21.

As more fully detailed in Exhibit B, the Amended Complaint further alleges that the Defendants—including DWSWA—were guilty of polluting and contaminating the Consasauga River, the Oostanaula River, the Coosa River and other tributaries and watersheds in the Upper Coosa River basis. [Ex. B. ¶¶ 4-6].

22.

As more fully detailed in Exhibit B, the Amended Complaint further alleges that the Defendants—including, DWSWA—were guilty of "intentional, willful, wanton, reckless, malicious and oppressive misconduct." [Ex. B. ¶ 6].

23.

In short, the Amended Complaint alleges that DWSWA was liable for damages because it intentionally polluted several waterways with polyfluoralkyl.

24.

The Amended Complaint also alleges that DWSWA knew for a great deal of time before the filing of the Underlying Lawsuit that it was intentionally polluting several waterways with chemical pollutants.

25.

Specifically, and as more fully detailed in Exhibit B, the Amended Complaint alleges that the Defendants—including DWSWA—"have long been aware of the persistence and toxicity of PFAS, and PFOA and PFOS in particular. Defendants nonetheless knowingly and intentionally discharged these chemicals into the Dalton POTW, where they inevitably Pass Through the POTW and are discharged from the Riverbend LAS to the Conasauga River and then travel downstream and contaminate the Oostanaula River . . . ." [Ex. B. ¶ 66 *see also* Ex. B ¶ 78].

26.

As more fully set forth in Exhibit B, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, has pled the following claims in the Amended Complaint in the Underlying Lawsuit:

> Count One:  Discharge of Pollutants to Surface Waters without an NPDES Permit in Violation of the Clean Water Act.

Count Two: Industrial User Pass Through Discharges of Pollutants in Violation of Dalton Utilities' Sewer Use Rules and Regulations and the Clean Water Act.

Count Three: Willful, Wanton, Reckless, or Negligent Misconduct.

Count Four:  Negligence Per Se.

Count Five:  Punitive Damages.

Count Six:  Public Nuisance.

Count Seven: Claims for Abatement and Injunction of Public Nuisance.

[Exhibit B]

27.

All seven counts are based on allegations of unlawful pollution of surface waters by discharges of toxic polyfluoroalkyl substances (PFAS). [Ex. B].

28.

In Count Three of the Amended Complaint, and as more fully set forth in Exhibit B, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, asserts a theory of liability against DWSWA for "knowingly" breaching a duty to exercise due and reasonable care to prevent the discharge of toxic PFAS chemicals into waters of the State and waters of the United States and the Conasauga and Oostanaula Rivers. [Ex. B ¶¶ 149-150].

29.

In Count Five of the Amended Complaint, and as more fully set forth in Exhibit B, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, asserts a theory of liability against DWSWA (along with numerous other Defendants) for acting with "willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequence." [Ex. B ¶ 163].

30.

As previously noted, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, alleges that DWSWA (along with numerous other Defendants) has had notice for a long period of time prior to the filing of the Underlying Lawsuit that its actions would cause damages and pollute the riverways. [Ex. B. ¶¶ 66, 78].

31.

JRIC first received notice of the Underlying Lawsuit on September 17, 2020.

32.

By virtue of DWSWA's notice to JRIC, Plaintiff here first received notice of the incidents and activities which underpin the factual claims being asserted against DWSWA in the Underlying Lawsuit on September 17, 2020.

33.

DWSWA first entered an appearance in the case via counsel on September 24, 2020.

34.

Johnson filed a Second Amended Complaint on September 25, 2020.  A true and correct copy is attached hereto as Exhibit "C."

35.

JRIC prepared and sent to DWSWA a Reservation of Rights letter on December 4, 2020.  (On November 9, 2021, JRIC sent a supplemental reservation of rights letter to Mr. Dirk Verhoeff at Dalton Whitfield Solid Waste Management, P.O. Box 1205, Dalton, GA 30722.)

36.

JRIC is providing a defense to DWSWA in the Underlying Lawsuit subject to a complete reservation of rights.

37.

On December 14, 2020, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, filed a Third Amended Complaint in the United States District Court for the Northern District of Georgia, Rome Division (4:20-cv-0008- AT). A true and correct copy of the Third Amended Complaint is attached as Exhibit "D".

38.

As more fully detailed in Exhibit D, the Third Amended Complaint repeats the allegation that DWSWA "is an enterprise fund, with the capacity to sue and be sued, created by the City of Dalton and Whitfield County, Georgia in 1994 to manage the solid waste needs of Dalton – Whitfield County. The DWSWA operates, among other facilities, the Old Dixie Highway Landfill, and a Carpet Landfill, both of which are located at 4189 Old Dixie Highway SE in Dalton, Georgia, 30721. The DWSWA has for many years discharged landfill leachate containing PFAS, which is industrial wastewater, into the Dalton POTW, and in early 2013, the DWSWA installed a forced sewer main to send its landfill leachate directly to the Dalton POTW." [Ex. D ¶ 29].

39.

As more fully detailed in Exhibit D, the Third Amended Complaint repeats the allegation that polyfluoralkyl substances "are a large group of man-made chemicals that do not occur naturally in the environment." [Ex. D ¶ 52].

40.

As more fully detailed in Exhibit D, the Third Amended Complaint realleges that there "is no known environmental breakdown mechanism for [polyfluoralkyl substances], and they are readily absorbed into biota and tend to

bioaccumulate with repeated exposure. [Polyfluoralkyl substances] leach from soil to groundwater, are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination, and a major source of human exposure to [polyfluoralkyl substances] is through ingestion of contaminated drinking water." [Ex. E. ¶ 53].

41.

As more fully detailed in Exhibit D, the Third Amended Complaint realleges that the Defendants—including DWSWA—were guilty of "intentional, willful, wanton, reckless, and negligent discharge of [polyfluoralkyl substances] from Defendants' manufacturing processes and facilities into the [Dalton Utilities Publicly Owned Treatment Works]." [Ex. D. ¶ 2].

42.

As more fully detailed in Exhibit D, the Third Amended Complaint further realleges that the Defendants—including DWSWA—were guilty of polluting and contaminating the Consasauga River, the Oostanaula River, the Coosa River and other tributaries and watersheds in the Upper Coosa River basin. [Ex. D. ¶¶ 4-6].

43.

As more fully detailed in Exhibit D, the Third Amended Complaint further realleges that the defendants—including DWSWA —were guilty of "intentional, willful, wanton, reckless, malicious and oppressive misconduct." [Ex. D. ¶ 6].

44.

In short, the Third Amended Complaint repeats the allegations contained in the Amended Complaint that DWSWA is liable for damages because it intentionally polluted several waterways.

45.

The Third Amended Complaint also repeats the allegation that DWSWA knew for a great deal of time before the filing of the Underlying Lawsuit that it was intentionally polluting several waterways with chemical pollutants.

46.

Indeed, as more fully detailed in Exhibit D, the Third Amended Complaint further realleges that the Defendants—including DWSWA—"have long been aware of the persistence and toxicity of PFAS, and PFOA and PFOS in particular. Defendants nonetheless knowingly and intentionally discharged these chemicals into the Dalton POTW, where they inevitably Pass Through

the POTW and are discharged from the Riverbend LAS to the Conasauga River and then travel downstream and contaminate the Oostanaula River . . . ." [Ex. D. ¶ 67 *see also* Ex. D ¶ 79].

47.

As more fully set forth in Exhibit D, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated has pled the following claims in the Third Amended Complaint:

Count One: Discharge of Pollutants to Surface Waters without an NPDES Permit in Violation of the Clean Water Act.

Count Two: Industrial User Pass Through Discharges of Pollutants in Violation of Dalton Utilities' Sewer Use Rules and Regulations and the Clean Water Act.

Count Three: Willful, Wanton, Reckless, or Negligent Misconduct.

Count Four: Negligence Per Se.

Count Five: Punitive Damages.

Count Six: Public Nuisance.

Count Seven: Claims for Abatement and Injunction of Public Nuisance.

[Exhibit D].

48.

All seven counts are based on allegations of unlawful pollution of surface waters by discharges of toxic polyfluoroalkyl substances (PFAS). [Ex. D].

49.

In Count Three of the Third Amended Complaint, and as more fully set forth in Exhibit D, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, asserts a theory of liability against DWSWA (along with numerous other Defendants) for "knowingly" breaching a duty to exercise due and reasonable care to prevent the discharge of toxic PFAS chemicals into waters of the State and waters of the United States and the Conasauga and Oostanaula Rivers. [Ex. D ¶¶ 151-156].

50.

In Count Five of the Third Amended Complaint, and as more fully set forth in Exhibit D, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, asserts a theory of liability against DWSWA (along with numerous other Defendants) for acting with "willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which

would raise the presumption of conscious indifference to consequence." [Ex. D ¶ 166].

51.

As noted, Jarrod Johnson, individually, and on behalf of a class of persons similarly situated, alleges that DWSWA has had notice for a long period of time that its actions would cause damages and pollute the riverways. [See Ex. D. ¶¶ 67, 79].

*The Policies*

52.

JRIC issued DWSWA policy number 00024591-0, which was a general commercial liability insurance policy issued under form CG 00 01 10 01 and modified by several policy endorsements (hereinafter collectively the "Policy"). A copy of the Policy is attached hereto as Exhibit "E." The policy period was listed as 07-01-2007 through 07-01-2008, with a retroactive date of "NONE".

53.

JRIC issued DWSWA policy number 00024591-1, which was a general commercial liability insurance policy issued under form CG 00 01 10 01 and modified by several policy endorsements (hereinafter collectively the "Policy"). A copy of the Policy is attached hereto as Exhibit "F." The policy period was listed as 06-01-2008 through 06-01-2009, with a retroactive date of "NONE".

54.

JRIC issued DWSWA policy number 00024591-2, which was a general commercial liability insurance policy issued under form CG 00 01 10 01 and modified by several policy endorsements (hereinafter collectively the "Policy").  A copy of the Policy is attached hereto as Exhibit "G." The policy period was listed as 06-01-2009 through 06-01-2010, with a retroactive date of "NONE".

55.

JRIC issued DWSWA policy number 00024591-3, which was a general commercial liability insurance policy issued under form CG 00 01 10 01 and modified by several policy endorsements (hereinafter collectively the "Policy").  A copy of the Policy is attached hereto as Exhibit "H." The policy period was listed as 06-01-2010 through 06-01-2011, with a retroactive date of "NONE".

56.

JRIC issued DWSWA policy number 00024591-4, which was a general commercial liability insurance policy issued under form CG 00 01 10 01 and modified by several policy endorsements (hereinafter collectively the "Policy").  A copy of the Policy is attached hereto as Exhibit "I." The policy period was listed as 06-01-2011 through 06-01-2012, with a retroactive date of "NONE".

57.

JRIC issued DWSWA policy number 00024591-5, which was a general commercial liability insurance policy issued under form CG 00 01 12 07 and modified by several policy endorsements (hereinafter collectively the "Policy"). A copy of the Policy is attached hereto as Exhibit "J." The policy period was listed as 06-01-2012 through 06-01-2013, with a retroactive date of "NONE".

58.

JRIC issued DWSWA policy number 00024591-6, which was a general commercial liability insurance policy issued under form CG 00 01 12-07 and modified by several policy endorsements (hereinafter collectively the "Policy"). A copy of the Policy is attached hereto as Exhibit "K." The policy period was listed as 06-01-2013 through 06-01-2014, with a retroactive date of "NONE".

59.

JRIC issued DWSWA policy number 00024591-7, which was a general commercial liability insurance policy issued under form CG 00 01 12 07 and modified by several policy endorsements (hereinafter collectively the "Policy"). A copy of the Policy is attached hereto as Exhibit "L." The policy period was listed as 06-01-2014 through 06-01-2015, with a retroactive date of "NONE".

60.

JRIC issued DWSWA policy number 00024591-8, which was a general commercial liability insurance policy issued under form CG 00 01 12 07 and modified by several policy endorsements (hereinafter collectively the "Policy").  A copy of the Policy is attached hereto as Exhibit "M" The policy period was listed as 06-01-2015 through 06-01-2016, with a retroactive date of "NONE".

61.

JRIC issued DWSWA policy number 00024591-9, which was a general commercial liability insurance policy issued under form CG 00 01 12 07 and modified by several policy endorsements (hereinafter collectively the "Policy").  A copy of the Policy is attached hereto as Exhibit "N." The policy period was listed as 06-01-2016 through 06-01-2017, with a retroactive date of "NONE".

62.

JRIC issued DWSWA policy number 00024591-10, which was a general commercial liability insurance policy issued under form CG 00 01 12 07 and modified by several policy endorsements (hereinafter collectively the "Policy").  A copy of the Policy is attached hereto as Exhibit "O." The policy period was listed as 06-01-2017 through 06-01-2018, with a retroactive date of "NONE".

63.

JRIC issued DWSWA policy number 00024591-11, which was a general commercial liability insurance policy issued under form CG 00 01 12 07 and modified by several policy endorsements (hereinafter collectively the "Policy").  A copy of the Policy is attached hereto as Exhibit "P." The policy period was listed as 06-01-2018 through 06-01-2019, with a retroactive date of "NONE".

64.

JRIC issued DWSWA policy number 00024591-12, which was a general commercial liability insurance policy issued under form CG 00 01 12 07 and modified by several policy endorsements (hereinafter collectively the "Policy").  A copy of the Policy is attached hereto as Exhibit "Q." The policy period was listed as 06-01-2019 through 06-01-2020, with a retroactive date of "NONE".

65.

JRIC issued DWSWA policy number 00024591-13, which was a general commercial liability insurance policy issued under form CG 00 01 12 07 and modified by several policy endorsements (hereinafter collectively the "Policy").  A copy of the Policy is attached hereto as Exhibit "R." The policy period was listed as 06-01-2020 through 06-01-2021, with a retroactive date of "NONE".

66.

JRIC issued DWSWA policy number 00024591-14, which is a general commercial liability insurance policy issued under form CG 00 01 12 07 and modified by several policy endorsements (hereinafter collectively the "Policy"). A copy of the Policy is attached hereto as Exhibit "S." The policy period was listed as 06-01-2021 through 05-01-2022, with a retroactive date of "NONE".

67.

The JRIC Policies had an effective date of July 1, 2007 and were continuously renewed by DWSWA through June 1, 2022.

68.

Both Commercial General Liability Coverage Form CG 00 01 10 01 and Commercial General Liability Coverage Form CG 00 01 04 13 include the following relevant exclusion language:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**\*\***
**\***

**2.     Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury resulting from the use of reasonable force to protect persons or property.

69.

Having reserved its right to assert any applicable defenses to coverage, JRIC has initiated a preliminary investigation and believes that the acts, liability, and/or damages alleged against DWSWA in the Underlying Action may also fall within certain exclusions which are not covered under the terms of the Policy.

70.

The JRIC Policies spanning 6/01/12 through 5/01/22 all contain commercial general liability coverage form CG00 01 04 13.

71.

Both of the commercial general liability coverage forms contained in the JRIC Policies involved here have essentially identical wording for the "Insuring Agreement" language. The Insuring Agreements of all JRIC policies set forth terms and conditions under which these insurance policies may respond to any presented claim.

72.

JRIC is uncertain as to whether or not it has any duty to defend or to provide coverage to DWSWA for any claims brought or judgment obtained by Johnson.

WHEREFORE, Plaintiff James River Insurance Company respectfully requests that this Court enter a judgment declaring the rights and obligations of the parties under the Policies, including but not limited to:

a.   Whether or not the Policies afford any insurance coverage to DWSWA in connection with the Underlying Action;

b   Whether or not James River Insurance Company has any duty or obligation under the Policy to provide DWSWA with a defense in connection with the Underlying Action;

c.   Whether or not James River Insurance Company has any obligation to pay any amount of any judgment that may be entered against DWSWA in connection with the Underlying Action; and

d.   Such other and further relief as the Court deems proper and just.

This 4th day of February, 2022.

Respectfully submitted,

**HAWKINS PARNELL & YOUNG LLP**


*/s/ Frank C. Bedinger*
Frank C. Bedinger
Georgia Bar No. 046675

303 Peachtree Street, Suite 4000
Atlanta, Georgia 30308-3243
(404) 614-7400 Office
(404) 614-7500 Facsimile
fbedinger@hpylaw.com

*Attorney for James River Insurance Company*